HAL E. ROACH STUDIOS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 13670.   Promulgated September 23, 1930.

*A. Calder Mackay, Esq., Benjamin W. Shipman, Esq.*, and *George M. Thompson, C. P. A.*, for the petitioner.

*James L. Backstrom, Esq.*, and *C. H. Curl, Esq.*, for the respondent.

914

OPINION.

Van Fossan: The issue with respect to the comparatives used by the respondent in the special assessment for the year 1920 is not now before us for determination. The sole question for our consideration is whether or not there were present in the petitioner's business in 1919 abnormal conditions so affecting petitioner's capital or income that, under the provisions of section 327 of the Revenue Act of 1918, it is entitled to have its tax computed pursuant to the terms of section 328 of the Act.

The petitioner bases its claim that its income for 1919 was affected by abnormal conditions principally on the contentions that:

(1) The right to the exclusive services of Hal E. Roach and Harold C. Lloyd were intangible assets of great value which can not be included in invested capital, and

(2) That the advances made by the Pathe Exchange, Inc., were borrowed capital necessary to petitioner's operations and could not be included in the invested capital.

In our opinion the mere fact that Harold C. Lloyd was an actor " of peculiar and unique ability," whose professional services the petitioner, by contract, controlled exclusively, and the fact that Hal E. Roach was a manager and director of great distinction, do not constitute abnormality within the provisions of the statute. In the successful production of motion pictures the personality and histrionic ability of the actors must, necessarily, play an important part, and management, of course, is usually a large factor in the success of any business. But to hold that the presence in any mo-

tion picture organization of distinguished actors and unusually capable management and direction gives rise to an abnormality affecting the producing corporation's income would be to put a premium on mediocrity and would be to say that factors which are inherent, to a greater or less degree, in the very nature of the business, are abnormal. In our opinion there is nothing in the proof which leads to such a conclusion.

Nor are we impressed by the petitioner's contention that Hal E. Roach's salary was abnormally low, that he was worth more to the corporation than the amount of that salary and that, therefore, there was an abnormality. There was testimony to the effect that the Christie Film Co. would have been willing to pay Hal E. Roach $2,000 a week for his services, which amount is approximately $75,000 a year more than he received as salary from the petitioner. This evidence is not convincing. It was testified that the leading producers of photoplay comedies were Mack Sennett, the Christie Film Co. and the petitioner. It is obvious, therefore, that the Christie Film Co. would have found it to its advantage to employ at a very high salary the sole stockholder, manager and director of a principal competitor, thereby lessening competition in its branch of the photoplay industry. It does not necessarily follow that Hal E. Roach was worth the same amount to petitioner. It should be observed that, as the sole stockholder of the petitioner, Hal E. Roach was entitled to receive not only his salary as the petitioner's chief executive, but also whatever dividends were earned and declared. His salary of $30,150 a year was substantial in amount and there is no evidence from which it can be inferred that this sum was not commensurate with the value of the services he rendered. Moreover, since petitioner's net income for the year 1919 was only $28,205.54, it is apparent that payment to Hal E. Roach of a salary amounting to $75,000 more than he actually received would have created a deficit of approximately $45,000. The payment of such a salary, therefore, would have been unreasonable. *Am-Plus Storage Battery Co.*, 11 B. T. A. 733; 35 Fed. (2d) 167.

While it is apparent that the advances made to the petitioner by Pathe Exchange, Inc., contributed to the petitioner's production and income, we have held heretofore that the use of borrowed capital does not in itself create an abnormality. *W. E. Beckmann Bakers' & Confectioners' Supply Co.*, 13 B. T. A. 860; *Iron City Electric Co.*, 13 B. T. A. 286; *Peck Coal Corporation*, 15 B. T. A. 189. There is no evidence that it was unusual in the industry for distributors of photoplays to make such advances to producers as were made by Pathe Exchange, Inc., to the petitioner. In other words, there is no evidence in the record from which it can be inferred that the

advances referred to created any condition whatever which was abnormal in the business of producing photoplay comedies.

We are of the opinion that the respondent did not err in denying petitioner's application for assessment for the year 1919 under the provisions of sections 327 and 328 of the Act of 1918.

*Decision will be entered in due course for the Respondent as to the year 1919; further proceeding shall be had under Rule 62 (c) respecting the calendar year 1920.*

*A. Calder Mackay, Esq., Benjamin W. Shipman, Esq.,* and *George M. Thompson, C. P. A.,* for the petitioner.

*James L. Backstrom, Esq.,* and *C. H. Curl, Esq.,* for the respondent.